# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM R. SPARKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:11-cv-00074 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 14.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his applications for DIB and SSI on July 3, 2008, alleging that he had been

1

disabled since December 22, 2007, due to back problems, high blood pressure, diabetes, shoulder injury, vision problems, arthritis, and "crooked spine." Docket No. 10, Attachment ("TR"), TR 114-16, 117-18, 125-32. Plaintiff's applications were denied both initially (TR 62, 63) and upon reconsideration (TR 66, 78-79). Plaintiff subsequently requested (TR 85-86) and received (TR 89-101) a hearing. Plaintiff's hearing was conducted on April 7, 2010, by Administrative Law Judge ("ALJ") Robert L. Erwin. TR 24-61. Plaintiff and vocational expert ("VE"), Julian Nadolsky, appeared and testified. *Id.*

On June 2, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 10-23. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since December 22, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: right shoulder injury; lumbar back pain; hypertension; and diabetes mellitus (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally lift 20 pounds; frequently lift 10 pounds; stand or walk for 6 hours in an 8-hour workday with normal breaks; and sit for 6 hours in an 8-hour workday with normal breaks. He is

2

|     | precluded from more than occasional reaching in all directions with his right upper extremity. |
| --- | --- |
| 6.  | The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). |
| 7.  | The claimant was born on October 12, 1956 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963). |
| 8.  | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). |
| 9.  | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). |
| 11. | The claimant has not been under a disability, as defined in the Social Security Act, from December 22, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

TR 15-20.

On June 28, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 8-9. On June 14, 2011, the Appeals Council issued a letter declining to review the case (TR 1-7), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence

4

supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

>   (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---
[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) failing to provide "good reasons" for rejecting the opinion of Dr. Michael Cox, Plaintiff's treating physician; and 2) improperly discrediting Plaintiff's subjective complaints of pain. Docket No. 13. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**<u>1. Weight Accorded to the Opinion of Plaintiff's Treating Physician[2]</u>**

Plaintiff argues that the ALJ improperly rejected Dr. Cox's opinion without articulating a sufficient rationale for doing so. Docket No. 13. Plaintiff additionally argues that Dr. Cox's opinion was entitled to controlling weight under the "treating physician rule"; or, alternatively, that the opinion of Dr. Cox, as treating physician, was entitled to more weight than other medical opinions. *Id.* Plaintiff argues that the ALJ improperly rejected Dr. Cox's assessment by opining that Dr. Cox appeared to base his opinions only on Plaintiff's subjective statements, and by stating that Dr. Cox assessed Plaintiff at the request of Plaintiff's disability attorney, in preparation for Plaintiff's disability claim. *Id.*

Defendant responds that substantial evidence supports the ALJ's assessment of Dr. Cox's opinion. Docket No. 14. Specifically, Defendant argues that the ALJ appropriately explained his reasons for not according Dr. Cox's opinions significant weight by indicating that Plaintiff did not have a treatment relationship with Dr. Cox; that Dr. Cox's opinions were based primarily on plaintiff's complaints; that Dr. Cox's lumbar impairment diagnosis was not based on laboratory diagnostic evidence; that later evidence showed no disc herniations; and that Dr. Cox's opinions were inconsistent with the opinions of several other physicians, as well as other substantial evidence on record. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations

---

[2] Plaintiff explains that although he originally saw Dr. Cox as a "consultative physician after being referred by his counsel," he later "consulted Dr. Cox for treatment," thereby making Dr. Cox his treating physician such that the treating physician rule applies. Docket No. 13, p. 5.

states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

On March 23, 2010,[3] at the request of Plaintiff's counsel, Dr. Cox performed his first examination of Plaintiff. TR 219-20, 230. Dr. Cox did not institute any therapies at that time. TR 230. On March 28, 2010, Dr. Cox completed a Lumbar Spine: Residual Functional Capacity Questionnaire regarding Plaintiff. TR 221-24. In that Questionnaire, Dr. Cox noted that, upon examination, Plaintiff had a reduced range of motion in his "LS spine," and had a positive straight leg raising test, with both the left and right legs at thirty percent. TR 222. Dr. Cox opined that Plaintiff's pain and/or other symptoms would be severe enough to constantly interfere with his attention and concentration at work. *Id.* Dr. Cox also opined that Plaintiff could: walk one city block without rest or severe pain, sit for a maximum of two hours and thirty minutes at one time and about four hours per eight-hour workday, and stand for a maximum of one hour and thirty minutes at one time and less than two hours per eight-hour workday. TR 222-23. Dr. Cox further specified that Plaintiff would need to walk around for five minutes every thirty minutes, and that Plaintiff would need a job that provided a sit/stand/walking option at will because Plaintiff would need to take fifteen minute breaks every half hour, "as needed." TR 223. Dr. Cox noted that Plaintiff would not need a cane or other ambulatory device when walking around and that Plaintiff would not need to elevate his legs. *Id.* Dr. Cox opined that Plaintiff could never lift and carry fifty pounds, rarely lift and carry twenty pounds, occasionally lift and carry ten pounds, and frequently lift and carry less than ten pounds. *Id.* Dr. Cox further opined that Plaintiff could never twist; could rarely stoop/bend, crouch/squat, or climb ladders or stairs; and had significant limitation in performing repetitive reaching, handling, and/or

---

[3] The handwritten examination notes list the examination date as March 23, 2010, while the typed notes list the date as March 26, 2010. *See* TR 220 vs. TR 219. These date differentials are immaterial to the issues before the Court.

fingering. TR 224. Specifically, Dr. Cox opined that Plaintiff could us his hands to grasp, turn, or twist objects for seventy-five percent of an eight-hour workday, could use his fingers for fine manipulation for ninety percent of an eight-hour workday, and could use his arms for reaching for fifty percent of an eight-hour workday. *Id.* Dr. Cox noted that Plaintiff's impairments were likely to produce good days and bad days, and that Plaintiff would be likely to miss work as a result of his impairments or treatment more than four days per month. *Id.* Dr. Cox indicated that he did not expect Plaintiff's condition to improve. TR 221. When asked to identify the clinical findings, laboratory and test results that demonstrated Plaintiff's medical impairments, Dr. Cox noted "abnormal exam." *Id.*

Subsequently, on April 15, 2010, at Dr. Cox's request, an MRI of Plaintiff's lumbar spine was performed, which revealed:

> FINDINGS:
> The bones are normally aligned and are grossly normal in signal intensity. Vertebral body heights are preserved. There is disc space narrowing at T11-12 and T12-L1. There is some loss of signal involving the discs at these levels as well as at L2-3 and L3-4 consistent with decreased water content and degeneration of the discs at these levels. The [illegible] is at the L1 level. There is diffuse disc bulging at L2-3. No gross central canal or neural foraminal stenosis is noted. No focal or acute disc pathology is appreciated at any level.
>
> IMPRESSION:
> Evidence of multilevel degenerative disc disease. Diffuse disc bulging at L2-3 without definite focal herniation appreciated

TR 225.

As has been noted, Plaintiff contends that the ALJ failed to provide good reasons for rejecting Dr. Cox's opinion. Docket No. 13, p. 5. Regarding Dr. Cox, the ALJ stated:

> Dr. Cox performed an examination of the claimant in March 2010

11

at the request of his attorney and assessed him with lumbar
degenerative disc disease with chronic lower back pain; history of
right clavicular fracture; chronic obstructive pulmonary disease
with history of tobacco abuse; type II diabetes mellitus; essential
hypertension; and hyperlipidemia. It was the opinion of Dr. Cox
that the claimant could occasionally lift 10 pounds; could only
rarely lift 20 pounds; and would be absent from work for four or
more time during a normal month of work. Subsequent to this
residual functional capacity, in April 2010 Dr. Cox performed and
MRI of the claimant's lumbar spine for evaluation of radicular
back pain, and the MRI showed multilevel degenerative disc
disease with diffuse disc bluing at L2-3 without focal herniation.

TR 18.

When discounting Dr. Cox's opinion, the ALJ explained:

The undersigned acknowledges the opinion of Dr. Cox who
limited the claimant to less than sedentary work due to his
complaints of chronic back and shoulder pain and chronic
shortness of breath. It is emphasized that the claimant underwent
the examination that formed the basis of the opinion in question
not in an attempt to seek treatment for symptoms, but rather,
through attorney referral and in connection with an effort to
generate evidence for the current appeal. Further, the doctor was
presumably paid for the report. Although such evidence is
certainly legitimate and deserves due consideration, the context in
which it was produced cannot be entirely ignored. Additionally, it
is the opinion of the undersigned that such a restrictive medical
source statement appears to be based entirely on the statements of
the claimant rather than on the objective medical evidence of
record. The undersigned further questions the physician's
statement that the claimant has a "crooked spine" and is not
cognizant that such is a medical term. While Dr. Cox appears to
have based his residual functional capacity of the claimant on the
claimant's assertions of physical complaints, it is noteworthy that
the physician was not privy to any MRI of the claimant's lumbar
spine when he provided such a restrictive physical capacity
limitation [as] he did not refer the claimant for the MRI until a
month after his physical examination. The undersigned notes that
the MRI shows evidence of degenerative disk disease but that is
also does not indicate any disc herniations.

TR 16.

12

In addition to his argument that the ALJ failed to provide good reasons for discounting Dr. Cox's opinion, Plaintiff specifically takes issue with the following: 1) the ALJ's contention that Dr. Cox did not base his opinion on objective medical evidence; 2) the ALJ's statement questioning the Dr. Cox's statement that Plaintiff has a "crooked spine" because that is not a medical term; and 3) the ALJ's notation that Dr. Cox examined Plaintiff at the request of his attorney. Docket No. 13. Plaintiff argues that the ALJ's contention that Dr. Cox did not base his opinion on objective medical evidence is "not entirely accurate" because a later MRI confirmed Dr. Cox's diagnosis of degenerative disc disease, and because Dr. Cox did find that Plaintiff demonstrated positive straight leg raising tests. *Id.* Plaintiff's argument is misplaced, however, as the later confirmation of part of Dr. Cox's assessment does not change the fact that the ALJ was correct in his contention that at the time that Dr. Cox completed the Questionnaire, Dr. Cox had not yet sent Plaintiff for any objective testing, and instead, had based his opinion on his one-time examination of Plaintiff and on Plaintiff's subjective complaints as relayed therein.

As noted, Plaintiff also takes issue with the ALJ's statement:

> The undersigned further questions the physician's statement that the claimant has a "crooked spine" and is not cognizant that such is a medical term.

TR 16. While Plaintiff acknowledges that the "ALJ's observation may be correct," Plaintiff argues that "it is undisputed that [Plaintiff] suffers from scoliosis, which is a spinal abnormality." Docket No. 13. The ALJ's articulated rationale demonstrates that he properly considered the record and that he did not discount Dr. Cox's opinion simply because Dr. Cox used a descriptive phrase that was not a medical term. Plaintiff's contention that this somehow constitutes grounds for reversal or remand fails.

13

As also noted, Plaintiff additionally argues that the ALJ improperly discounted Dr. Cox's opinion because Dr. Cox examined Plaintiff at the request of his attorney. Docket No. 13. Contrary to Plaintiff's assertion, however, the ALJ did not discount Dr. Cox's opinion because it was rendered at the request of Plaintiff's counsel. In fact, as can be seen in the quoted passages above, the ALJ explicitly acknowledged that evidence gathered at the request of an attorney is "certainly legitimate and deserves due consideration." TR 16.

As an additional matter, Plaintiff's argument that because he subsequently sought treatment from Dr. Cox such that he later became a treating physician, the treating physician rule essentially retroactively applies to the opinion expressed in the Questionnaire, is fundamentally flawed. At the time Dr. Cox rendered the opinions expressed in the Questionnaire, he had seen Plaintiff on only one occasion, at the request of Plaintiff's counsel, for the purposes of his DIB and SSI applications. The fact that Plaintiff later sought treatment from him does not change the opinions rendered previously. Accordingly, the opinions expressed in the Questionnaire are those rendered from an examining (not treating) physician, and they are to be considered and weighed accordingly.

As can be seen via the quoted passages above, the ALJ discussed Dr. Cox's findings, considered Dr. Cox's opinion under the requisite criteria, reached a reasoned decision, and articulated a sound rationale for not according that opinion controlling weight. The Regulations do not require more. Accordingly, this claim fails.

## 2. Subjective Complaints of Pain

Plaintiff additionally contends that the ALJ erred in finding that his subjective complaints of pain were not fully credible. Docket No. 13. Specifically, Plaintiff argues that the ALJ's credibility determination was not supported by substantial evidence, and that the ALJ violated

SSR 96-7p by making inferences based on Plaintiff's noncompliance with treatment rather than considering Plaintiff's explanation that he failed to obtain treatment because he cannot afford mainstream health care. *Id.* Plaintiff contends that he meets the two-prong test for evaluating subjective complaints of pain because there is objective medical evidence of underlying medical conditions and because those conditions are of such severity that they can reasonable be expected to cause the disabling pain alleged. *Id.*

Defendant responds that substantial evidence supports the ALJ's credibility finding. Docket No. 14. Defendant maintains that the ALJ did not violate SSR 96-7p because he considered the evidence of record in its entirety before discounting Plaintiff's credibility. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity."

15

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ acknowledged Plaintiff's subjective complaints of pain, stating:

> He said that he has hypertension that is controlled with medications and stable diabetes mellitus for which he takes oral medications and maintains a diabetic diet. He said that he has visual problems for which he utilizes reading glasses, and when Dr. Roman examined the claimant he noted that his blurred vision had apparently cleared up when he became compliant with taking his Glucophage for treatment of his diabetes. Due to a history of tobacco abuse, the claimant related that he has emphysema with associated breathing problems but said he does not use any type of breathing apparatus and primarily just relaxes when he is short of breath and only smokes about a pack of cigarettes per week. The claimant stated that he has chronic back pain and problems with his right shoulder with an inability to lift his right arm above shoulder level. He averred that his mother performs all household chores and his dad does the outside work. The claimant reported that he can stand for one-half hour and sit or walk for 15 to 20 minutes at a time.

TR 17.

Contrary to Plaintiff's assertion that the ALJ improperly drew inferences regarding Plaintiff's symptoms and their functional effects from his failure to pursue regular medical treatment (Docket No. 13), the ALJ merely found Plaintiff's noncompliance "noteworthy." TR 18. Specifically, the ALJ stated that:

> The degree of the claimant's complaints of pain is not considered fully credible. Although he has been advised by physicians that he requires the services of a family physician in order to stabilize his hypertension and diabetes mellitus, there is no indication that the claimant has done so. It is noteworthy that medical records show that his hypertension and diabetes mellitus remained untreated, uncontrolled, and unstable for many years due to his lack of compliance with medical recommendations that he seek treatment with a family physician. The claimant stated that he basically does nothing around the house to help his parents other than helping his dad lift a bag of garbage into the truck. However, he declared that he exercises daily by walking on the treadmill for a few minutes. He said he enjoys getting on the computer and watching television. His ability to perform such a variety of daily activities tends to negate the credibility of his subjective complaints, especially the degree of pain he maintained he experiences. One would not reasonably anticipate that a person who experiences substantial drowsiness and side effects from medications, the degree of pain alleged, or severe depression and anxiety, to be able to tolerate the physical demands, the level of concentration, or the amount of social interaction, necessary to perform many of these activities.

TR 18.

The ALJ's decision in this case specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 15-19. The ALJ explained his reasons for discounting Plaintiff's credibility, and, contrary to Plaintiff's assertion, those reasons were not simply because Plaintiff was non-compliant in seeking medical care. TR 18.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective

17

medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's testimony regarding the severity of his pain and symptoms was "not considered fully credible." TR 18. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, the ALJ's determination must stand.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge